## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RAELEEN JOHNSON, individually and on behalf of the class and all others similarly situated,

        Plaintiffs,

DAVID BIZOUSKY, NATHAN BRACK, MICHAEL CHILDS, KENDEL DEBLIECK, DAVID EGERTON, PATRICIA GAGNON, TRACEY KEYES, NICK KNABE, RIC KOHLBECK, JAMES KOPHAMEL, MARTIN KUZEL, THOMAS LOVELL, DAVID MILLER, AARON MOE, BRANDAN MOFFETT, ERNEST NWAJUOBI, RICK PALANDRI, DINO PARDUCCI, ANTHONY PORTINCASO, SONNY ROCK, TROY SAINSBURY, MARK SCHELLHAMMER, GREG SCHLIESMANN MATTHEW SCHULTEIS, MICHAEL SCHWARZ, JOHN WHITE, PATRICK WIESE, AND DAVID ZEGUNIS,

        Plaintiffs

  v.

WATERSTONE MORTGAGE CORPORATION,

        Defendant.

Case No.

Assigned to:

**INDIVIDUAL, COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. This case is brought to remedy the failure of Defendant WATERSTONE MORTGAGE CORPORATION ("WATERSTONE"), to pay Plaintiffs minimum wages and overtime premium pay as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 et seq., and by WATERSTONE'S promise to pay them minimum wage and overtime premium pay as required by the common law of contract and quasi-contract. Plaintiffs are mortgage loan originators ("loan originators") for WATERSTONE. Like loan originators throughout the mortgage industry, they work very long hours.

2. Prior to August 1, 2010, WATERSTONE treated its loan originators as exempt from the FLSA and failed to record their hours of work. On March 24, 2010, the U.S. Department

of Labor issued an administrative Interpretation of the FLSA declaring that loan originators were not administratively exempt from the FLSA and withdrawing a prior Wage Hour Opinion Letter to the contrary. Upon information and belief, WATERSTONE was aware of the change, which was well publicized in the mortgage industry. Nevertheless, WATERSTONE did not begin to record loan originators' hours of work and did not move to pay loan originators overtime for hours over 40 in a work week.

3.    On August 1, 2010, WATERSTONE re-classified most loan originators as non-exempt from the FLSA and sent out a new employment agreement, under which loan originators were classified as "inside" or "outside" and a new compensation structure was rolled out to the "inside" loan originators, which promised to pay them an hourly wage set at the minimum wage rate plus a monthly commission. During this time, outside loan originators were paid commission only.

4.    In or about April 2011, WATERSTONE explicitly recognized that *all* of its loan originators are not exempt from the FLSA and sent its loan originators a new written employment agreement, under which it promised to pay them an hourly wage set at the minimum wage rate plus a monthly commission. WATERSTONE continued treating its loan originators as FLSA non-exempt hourly workers requiring that it pay loan originators at least the minimum wage for each hour worked, with overtime at the rate of time and one-half for each hour over 40 worked in a workweek. Because it was paying loan originators hourly, because WATERSTONE recognized that loan originators are not exempt from the FLSA, and because of Waterstone's promises and representations, WATERSTONE was required to pay the minimum wage for each hour worked and time

and one-half for all hours over 40 worked in a workweek.

5.      However, to evade its FLSA obligations as well as its contractual promise to loan originators, WATERSTONE did not pay its loan originators minimum and overtime wages as promised and as required by law, by failing to record all hours they worked, and failing to reimburse the business expenses Plaintiffs bore on its behalf. Waterstone knew or should have known that its loan originators worked more than 40 hours a week.

6.      WATERSTONE'S loan originators must work long hours, well over 40 in a week, in order to make money, since they must engage in extensive promotional activities necessary to originating loans, activities such as meeting with realtors and attorneys, attending open houses, networking, and working to start to process loans. During the collective arbitration proceeding of this case, WATERSTONE stipulated that loan originators worked an average of 52.5 during each week they worked.

7.      WATERSTONE requires loan originators to bear expenses which are for the benefit and convenience of WATERSTONE, such as licensing, meeting, travel, internet, and cell phone expenses, among others. These expenses for the benefit and convenience of WATERSTONE act as deductions or *de facto* deductions from the earnings, including the minimum wage earnings of the Plaintiffs. During arbitration proceedings related to this case, WATERSTONE stipulated that loan originators spent an average of $100 per week on unreimbursed business expenses during each week they worked.

8.      WATERSTONE knew or should have known that loan originators worked hours in excess of those they reported. WATERSTONE knew that loan originators had worked long hours prior to moving to the new compensation system, that in fact loan originators routinely worked 8-12 hours per day, 5-6 days per week. WATERSTONE knows that

loan originators do not work routine hours, and because WATERSTONE had not changed loan originators' responsibilities when it reclassified loan originators as FLSA non-exempt employees, it knew that loan originators typically work well over 40 hours in a week.

9.      WATERSTONE also knew or should have known that Plaintiffs were required to bear WATERSTONE's business expenses.

10.     Plaintiffs seek unpaid wages for the overtime hours they worked, unpaid minimum wages, liquidated damages, prejudgment interest, costs and attorneys' fees as well as declaratory relief. The Plaintiffs bring FLSA claims individually and Named Plaintiff JOHNSON brings FLSA claims individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA. 29 U.S.C. §216(b).

11.     In addition, by the conduct described in this Class Action Complaint, Defendant has violated the common law of contract, by failing to pay the Plaintiffs and the Class the wages WATERSTONE promised, i.e., overtime compensation at the rate of time and one-half, and minimum wage by making *de facto* unlawful deductions from the Plaintiffs' wages, and by not recording all the hours they worked.

12.     The Plaintiffs bring these contract claims individually and the Named Plaintiff JOHNSON brings these claims individually and on behalf of other similarly situated employees under the class action provisions of Fed. R. Civ. P. 23.

**JURY DEMAND**

13.     Plaintiffs hereby demand a trial by jury.

**JURISDICTION**

14.     Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor

4

Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202.

15. This Court has supplemental jurisdiction over the state claim raised by virtue of 28 U.S.C. §1367(a).

## VENUE

16. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

17. Upon information and belief, WATERSTONE resides in this District and Division.

18. Waterstone has consented to venue and jurisdiction in this District.

19. Plaintiff JOHNSON resides in this District and Division.

20. Some Plaintiffs labored for Defendant within this District.

21. The cause of action set forth in this Complaint arose in this District.

## PARTIES

**A.    Plaintiffs**

22. Named Plaintiff JOHNSON was an employee of Defendant. Her "Consent to Sue" is attached to the back of this complaint as Exhibit A. Plaintiff JOHNSON worked for Defendant in the state of Wisconsin. Plaintiff JOHNSON was engaged in commerce in her work for Defendant.

23. The other Plaintiffs listed in the caption were employed by Defendant as Loan Originators, subject to WATERSTONE's practices and procedures as described herein.

24. Upon information and belief, the Plaintiffs identified on the list set forth at the back of this complaint as Exhibit B, signed employment agreements with WATERSTONE

guaranteeing their right to proceed in Court to raise the claims in this Complaint.

25. Plaintiffs consent to sue Defendant for claims they have under the Fair Labor Standards Act.

26. Plaintiffs were engaged in commerce in their work for Defendant.

**B.     Represented Parties under FLSA**

27. The term "Collective Action Plaintiffs" as used in this complaint refers to the Named Plaintiff JOHNSON, whose Consent to Sue is attached hereto, and any additional represented class members pursuant to the collective action provision of 29 U.S.C. §216(b).

28. Named Plaintiff JOHNSON represents current and former "loan originators who have worked for WATERSTONE between August 1, 2010 and the date of final judgment in this matter in a non-supervisory capacity."

29. The Named Plaintiff brings this case as a collective action for class members throughout the U.S. as defined in the preceding paragraph, under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b).

**C.     Class Action Allegations**

30. Named Plaintiff JOHNSON brings the Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of "all mortgage loan originators who have worked for WATERSTONE at any point since August 1, 2010 and the date of final judgment in this matter in a non-supervisory capacity."

31. Excluded from the Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendant; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

32. The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

33. Upon information and belief, the size of the Class is at least 800 loan originators.

34. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

35. The Second Cause of Action is properly maintainable as a nationwide class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a. whether Defendant failed to keep true and accurate time records for all hours worked by the Plaintiff and the Class;

    b. what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

    c. whether Defendant failed and/or refused to pay the Plaintiff and the Class minimum wages for each hour that it knew or should have known they worked each week;

    d. whether Defendant failed and/or refused to pay the Plaintiff and the Class

overtime pay for hours worked in excess of 40 hours per workweek;

e. the nature and extent of Class-wide injury and the appropriate measure of damages for the Class;

f. whether Defendant's policy of failing to pay overtime was instituted willfully or with reckless disregard of the law;

g. whether Defendant correctly calculated and compensated the Plaintiff and the Class for hours worked in excess of 40 per workweek;

h. whether Defendant failed to pay all the commission earnings to which it had agreed in its employment agreement with Plaintiffs;

i. whether Defendant wrongfully failed to reimburse loan originators for employer expenses which effected a *de facto* deduction from the wages due to Plaintiffs, and

j. Whether Waterstone's policies and/or agreements with loan originators incorporated the FLSA.

36. The claims of the Named Plaintiff Johnson are typical of the claims of the Class she seeks to represent. The Plaintiff and the Class members work or have worked for Defendant and have been subjected to their policy and pattern or practice of failing to pay minimum wages and overtime wages for hours worked in excess of 40 hours per week. Defendant acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class appropriate.

37. Plaintiff JOHNSON seeks to be the Named-Plaintiff Representative on behalf of the Rule 23 and FLSA classes described herein. As such, she will fairly and adequately represent and protect the interests of the Class.

a. The Plaintiff Representative understands that, as class representative, she assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately.

b. The Plaintiff Representative recognizes that as class representative, she must represent and consider the interests of the Class just as she would represent and consider her own interest.

c. The Plaintiff Representative understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Class.

d. The Plaintiff Representative recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

e. The Plaintiff Representative understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

38. The Plaintiff Representative has retained counsel competent and experienced in complex class action employment litigation.

39. A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Class have been damaged and are entitled to recovery as a result of Defendant's common and

uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation against WATERSTONE. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

**D.    Defendant**

40.    WATERSTONE lists its principal office address as N25 W23255 Paul Rd, Pewaukee, Wisconsin 53072. Upon information and belief, WATERSTONE is a corporation having its headquarters and office in Wisconsin and places of business in Wisconsin.

41.    WATERSTONE is southeastern Wisconsin's largest mortgage lender with more than $1.1 billion in annual origination volume. Waterstone Mortgage Corporation, which had 78 offices in 23 states as of December 31, 2018. As of December 31, 2018, Waterstone Mortgage Corporation had 11 offices in each of Wisconsin and Florida, eight offices in each of Pennsylvania and New Mexico, six offices in Minnesota, four offices in Ohio and Texas, three offices in Michigan, two offices in each of Arizona, California, Illinois, Iowa, Maryland, New Hampshire, Oregon, and Virginia, and one office in each of Colorado, Delaware, Georgia, Idaho, Nebraska, North Carolina and Oklahoma.

42.    WATERSTONE is a wholly owned subsidiary of an FDIC bank, Waterstone Bank SSB which is a subsidiary of WATERSTONE FINANCIAL, INC. (NASDAQ: WSBF) which has assets of more than $1.92 billion (2018). WATERSTONE has 710 employees as of end of 2018.

43. Upon information and belief, WATERSTONE grossed more than $500,000 in each of the last ten calendar years.

44. WATERSTONE is an enterprise engaged in interstate commerce for purposes of the Fair Labor Standards Act.

45. WATERSTONE employed Plaintiffs and participated directly in employment decisions regarding the Plaintiffs for which they seek redress in this case.

46. All actions and omissions described in this complaint were made by Defendant directly or through its supervisory employees and agents.

## FACTS

47. Plaintiff Johnson began employment with Defendant in or about April 2011. Plaintiff Johnson left employment with Defendant in or about June 2014.

48. OTHER NAMED PLAINTIFFS began and ended their employment with Defendant in or about the dates set forth on the chart attached as Exhibit C hereto.

49. Plaintiffs are or were loan originators employed by WATERSTONE to originate mortgage loans.

50. Plaintiffs' job responsibilities were established by WATERSTONE.

51. Plaintiff and class members regularly worked more than 40 hours per week for Defendant. Plaintiffs regularly work 50 or more hours per week.

52. Prior to August 1, 2010, WATERSTONE treated its mortgage loan originators as exempt from the FLSA.

53. On March 24, 2010, the U.S. Department of Labor issued an administrative Interpretation of the FLSA declaring that loan originators were not administratively exempt from the FLSA and withdrawing a prior Wage Hour Opinion Letter to the contrary.

54. Upon information and belief, WATERSTONE was aware of the change, which was well publicized in the mortgage industry. Nevertheless, WATERSTONE did not begin to record loan originators' hours of work and did not move to pay some loan originators overtime for hours over 40 in a work week until August 1, 2010, and reclassified all loan originators as non-exempt in April 2011.

55. The recording and tracking of Plaintiff loan originators' work is administered and monitored by WATERSTONE on computerized time keeping systems.

56. On or about August 1, 2010, WATERSTONE changed its compensation structure, sending each loan originator a new written employment agreement to be executed by the company and the loan originator wherein they were classified as Inside or Outside loan originators. The Outside agreement agreed to pay Outside loan originators commission only. The new Inside employment agreement agreed to pay loan originators under a combination commission and hourly wage structure.

57. WATERSTONE knows that loan originators must work long hours, well over 40 in a week, in order to make commission income exceeding their floor, since they must engage in extensive promotional activities necessary to originating loans, activities such as meeting with realtors and attorneys, attending open houses, networking, etc. They must also engage in extensive loan processing activities to see that the loans they originate are processed through to closing.

58. Defendant knew or should have known that Plaintiffs and class members were working in excess of 40 hours in a work week.

59. Defendant knew or should have known that Plaintiffs were not recording all the hours they worked, particularly those in excess of 40 hours in a week.

60. Defendant knew or should have known that Plaintiffs were recording their hours of work in rote fashion even though a loan originators' hours are not routine, since they must answer calls from prospective borrowers at all hours of the day, including in the evening and on weekends.

61. WATERSTONE required loan originators to bear expenses which are for the benefit and convenience of WATERSTONE, such as travel expenses, internet, training, and cell phone expenses, among others.

62. Defendant discouraged Plaintiffs including class members from recording hours of work in excess of 40 in a work week.

63. Upon information and belief, Defendant failed to keep accurate time records for all the work Plaintiffs and the class members did on a daily or weekly basis.

64. Defendant failed to pay the Plaintiffs and the class members overtime compensation at the rate of time and one-half for all hours worked over 40 in a week.

65. Defendant failed to pay the Plaintiffs including the class members compensation equal to or higher than the federal or higher state minimum wage rate for all hours worked in a week.

66. Defendant did not pay Plaintiffs and the class members their wages "free and clear."

67. WATERSTONE's contract with loan originators stated that "Commissions are calculated by deducting the Base Pay *paid during the current pay period* from the aggregate commission calculated pursuant to Addendum A."

68. WATERSTONE uses a bi-weekly pay period and pays commissions on a monthly basis, if any were earned.

69. Defendant required Plaintiffs to purchase tools of the trade for their work for Defendant, which included cell phones, video conferencing, marketing materials, computers, software,

13

and other office equipment.

70. Defendant failed to reimburse Plaintiffs for their purchase of all work tools and supplies.

71. Beginning in April 2011, WATERSTONE treated all loan originators as FLSA non-exempt hourly workers requiring that it pay loan originators at least the minimum wage for each work week, with overtime at the rate of time and one-half for each hour over 40 worked in a workweek.

72. WATERSTONE promised its loan originators that they would receive a regular hourly rate of at least the minimum wage rate and overtime at the rate of time and one-half.

73. This promise as stated in the prior paragraph was set forth in a written contract given to each loan originator. WATERSTONE admitted this fact in a sworn pleading it filed in its malpractice lawsuit against its former attorneys in this case, Offit Kurman. 3:17-cv-796-jdp, Doc. 17, ¶8-10, stating, "After retaining Defendants as its attorneys, Defendants recommended that, based on an opinion letter from the U.S. Department of Labor, WATERSTONE change its employment agreements so as to treat the LOs as non-exempt under the FLSA in the sense that WATERSTONE voluntarily agreed to pay LOs overtime for work in excess of 40 hours per week. Specifically, it was Attorney Ari Karen ('Karen') and/or Attorney Russell Berger ('Berger') at the Offit Kurman law firm that provided this legal advice. Based on that advice, Defendants drafted new employment agreements for WATERSTONE's LOs to execute. The new employment agreements, drafted by Defendants, stated, among other things, that WATERSTONE would pay the employee minimum wage for all hours worked in a given week up to 40 hours, and would pay the employee overtime for all hours worked in a given week in excess of 40 hours."

74. Despite its promise to treat loan originators "as non-exempt under the FLSA," Defendant

failed to pay Plaintiffs the minimum wage for each hour they worked.

75. Defendant's stated policy was to pay Plaintiffs time and one-half their regular hourly rate for hours worked over 40 in a week.

76. Defendant did not pay Plaintiffs time and one-half their regular hourly rate for hours worked over 40 in a week.

77. Defendant did not pay Plaintiffs minimum wages or overtime in compliance with their promise to do so or in compliance with federal law.

78. Defendant's failure to pay Plaintiffs and class members the proper wages required by law was willful.

## CLASS-WIDE FACTUAL ALLEGATIONS

79. Defendant failed to accurately record Plaintiffs' start and stop time and daily and weekly hours of work.

80. Defendant knew or should have known that Plaintiffs worked hours over 40 hours in a week and worked hours that they did not report.

81. Upon information and belief, it was Defendant's willful policy and pattern or practice not to pay its employees, including Named and Other Plaintiffs, the Class Action Members, and the FLSA Collective Members (collectively "Class Members"), for all hours of work at their promised rate of pay, at the regular rate of pay, or pay an overtime premium for all work that exceeded 40 hours in a week, or in the amount agreed to by its employment agreement with loan originators.

82. Defendant's unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the Class Members.

83. Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Class Members, an overtime premium of time and one-half for all work-hours it suffered or permitted in excess of 40 per workweek. Upon information and belief, Defendant applied the same unlawful policies and practices to its loan originators in every state in which it operated.

## FIRST CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT)

84. Defendant failed to pay overtime wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §207 et seq. and its implementing regulations.

85. Defendant's failure to pay proper wages for each hour worked over 40 per week was willful within the meaning of the FLSA.

86. Defendant failed to pay minimum wages wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §206 et seq. and its implementing regulations.

87. Defendant's failure to pay Plaintiffs proper minimum wages for each hour worked per week was willful within the meaning of the FLSA.

88. Defendant's failure to pay Plaintiffs proper overtime wages for each hour worked over 40 per week was willful within the meaning of the FLSA.

89. Defendant's failure to comply with the FLSA overtime and minimum wage protections caused Plaintiffs to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
## (COMMON LAW CONTRACT
## AND/OR QUASI-CONTRACT)

90. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

91. Defendant promised orally and in writing to treat Plaintiffs and class members as FLSA non-exempt and to pay Plaintiffs at a set hourly rate for each hour of work up to 40 in a work week, and at the rate of time and one-half for hours worked over 40.

92.     Plaintiffs performed labor for Defendant knowing of and relying upon Defendant's promise.

93.     Defendant failed to pay the promised regular rate and the overtime premium wages for the hours it knew or should have known that Plaintiffs worked in violation of its promise to pay such wages.

94.     Defendant's failure to pay overtime as promised violated Plaintiffs' rights under the common law doctrines of contract and/or quasi-contract.

**WHEREFORE,** Plaintiffs request that this Court enter an Order:

1.     Permitting the Collective Action Plaintiffs to join this case as Plaintiffs.

2.     Declaring that the Defendant violated the Fair Labor Standards Act;

3.     Declaring that the Defendant's violations of the FLSA were willful;

4.     Granting judgment to Plaintiffs and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages;

5.     Awarding Plaintiffs, including class and collective represented parties prejudgment interest, and their costs and reasonable attorneys' fees; and

6.     With respect to the Class:

   A.     Certification of this action as a class action;

   B.     Designation of the Named Plaintiff Johnson as Class Representative;

   C.     A declaratory judgment that the practices complained of herein are unlawful under appropriate state law, including contract and state minimum wage and overtime guarantees;

   D.     Granting Plaintiffs, including Class Plaintiffs appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but

not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

E.   Granting an award of damages, liquidated damages, appropriate statutory penalties, restitution and exemplary and punitive damages to be paid by Defendant according to proof;

F.   Granting an award of pre-judgment and post-judgment interest, as provided by law;

G.   Granting such other injunctive and equitable relief as the Court may deem just and proper; and

H.   Awarding Plaintiff attorneys' fees and costs of suit, including expert fees and costs.


Dated: May 3, 2019                              Respectfully Submitted,

                                                *s/ Dan* Getman
                                                Dan Getman
                                                GETMAN, SWEENEY & DUNN, PLLC
                                                260 Fair Street
                                                Kingston, New York 12401
                                                phone: (845)255-9370
                                                fax: (845) 255-8649
                                                Email: dgetman@getmansweeney.com

                                                ATTORNEYS FOR PLAINTIFFS